IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 01:10-cv-23493-JLK

ITL INTERNATIONAL, INC., d/b/a MARS
CARIBBEAN AND CENTRAL AMERICA
f/d/b/a MASTER FOODS INTERAMERICA,

      Plaintiff,

v.

NINOSHKA, S.A., and CONFECTIONARY
TRADING CO., INC.

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants Ninoshka, S.A., and Confectionary Trading Co., Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (DE #44), filed March 10, 2011. Therein, Defendants seek dismissal of Plaintiff's Second Amended Complaint (DE #39) on the basis of 1) lack of subject-matter jurisdiction; 2) the Court's inherent authority to refuse to exercise jurisdiction; and 3) failure to state a claim.[1]

In broad terms, this dispute involves an American company that is selling products that ultimately end up in Guatemala. The issue is whether the American company, Mars, can seek declaratory relief in the United States as to a potential dispute between the parties, or instead whether a different forum is proper. Upon consideration of the parties' arguments and legal authorities cited, the Court finds that this is not a proper forum to adjudicate the bulk of Plaintiff's claim.

---

[1] The matter has been fully briefed, as Plaintiff filed a Response (DE #47) on April 4, 2011, to which Defendants filed a Reply (DE #50) on April 15, 2011. Additionally, the Court held oral argument on Defendants' Motion on June 2, 2011. (DE #54).

I.    Background

This Court previously dismissed Plaintiff's First Amended Complaint for lack of subject-matter jurisdiction. While recognizing that there is no bright-line rule for determining the existence of a case or controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, see *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007), nonetheless the Court found that the totality of the circumstances counseled against the finding of a case or controversy under the fact as alleged by Plaintiff. (DE #38). However, the Court gave Plaintiff an opportunity to amend.

Plaintiff did so, filing its Second Amended Complaint on February 24, 2011. Plaintiff's one-count Second Amended Complaint traces the circumstances leading up to the present dispute between Plaintiff and Defendants.[2] According to the Second Amended Complaint, Plaintiff is an American corporation that "sells products worldwide, including in Central America and the Caribbean region. [Its] products include confections, pet foods, and rice products manufactured by [] related and affiliated companies." (DE #39 ¶4). Defendant Ninoshka is a Guatemalan corporation that the Complaint alleges "operates a business in Miami-Dade County, Florida, through and with its affiliated company Defendant Confectionary Trading Co., Inc." *Id.* ¶5. Confectionary Trading Co., Inc., is itself a British Virgin Islands corporation, although the Second Amended Complaint alleges its principal place of business is in Miami, Florida. *Id.* ¶6. Plaintiff alleges that Ninoshka and Confectionary are affiliated companies. *Id.* ¶5.

This suit relates to the interplay between these three companies. Specifically, at issue is the distribution of certain Mars products in Guatemala. Plaintiff alleges that it has sold Mars products to Defendant Confectionary since 1989. *Id.* ¶9. While Plaintiff admits that it understood that those products were transferred to Defendant Ninoshka, it claims that it never had a distribution agreement

---

[2] Plaintiff's Second Amended Complaint is styled as a one-count Complaint, but it would more properly be considered one which seeks two distinct findings by this Court: a finding of no liability under Guatemalan law as to Plaintiff, and the violation of certain of Plaintiff's licenses and trademarks by Defendants.

2

with Ninoshka. *Id.* ¶10. Instead, Confectionary was always invoiced and paid Plaintiff from its Miami-Dade office. *Id.* ¶11. As part of the delivery of any goods from Plaintiff to Confectionary/Ninoshka, the goods were shipped F.O.B. through Port Everglades, Florida, which was the delivery location selected by Confectionary.

Nonetheless, this business relationship has now soured as Plaintiff has sought to widen the circulation of its products into the Guatemalan market. In 2008, Plaintiff informed Defendants that it wished to expand its Guatemalan sales to include sales to Wal-Mart. *Id.* ¶17. Salvador F. Safié, Ninoshka's President, warned Plaintiff that if it did so, it would be liable to Defendant Ninoshka for liquidated damages in the amount of $4.5 million under Guatemalan law, which safeguards the rights of exclusive distributors. *Id.* ¶¶17-18. In fear of this threat of liability, Plaintiff has taken no such action to pursue distribution in Guatemala. Plaintiff now claims that this warning constitutes a threat of lawsuit within the meaning of the Declaratory Judgment Act.

## II.    Legal Standard

The requirements of a motion to dismiss are well known: for the purpose of such a motion, "the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1247 (11th Cir. 2003). A complaint may only be dismissed if the facts as pleaded fail to state a facially plausible claim to relief. *See Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating former "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face"); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) ("Pleadings must be something more than an ... exercise in the conceivable."). In arriving at its determination, a court

must "limit[] its consideration to the pleadings and exhibits attached thereto." *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

### III. Discussion

Now, the issues before the Court are whether Plaintiff has adequately alleged a basis for declaratory relief and, if so, whether such an action is proper before this Court. As to the first issue, the Court finds that Plaintiff's Second Amended Complaint minimally states a basis for declaratory relief. However, for prudential reasons, this Court nonetheless declines to exercise jurisdiction as to the bulk of Plaintiff's claims.

A. Declaratory Relief

Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, federal courts are granted jurisdiction to adjudicate claims for declaratory relief to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). To determine when such rights and legal relations are properly pleaded, a court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation omitted). As such, for any action seeking declaratory relief, consideration must be given to the immediacy of any impending legal controversy between the parties in determining whether a justiciable right exists.

As this Court before noted in its earlier Order of Dismissal (DE #38 at 3), there is no bright-line test for determining when a case or controversy had been adequately pleaded. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) (noting each analysis must be calibrated to the individual facts at issue). Nonetheless, given the allegations of Plaintiff's First

Amended Complaint, the Court held that Plaintiff's claims involved too much indirect speculation to constitute a case or controversy. (DE #38 at 3).

After hearing oral argument on June 2, 2011 and in consideration of Plaintiff's Second Amended Complaint, the Court finds that Plaintiff has stated a sufficient basis for declaratory relief. Where Plaintiff's First Amended Complaint had broadly alleged that Ninoshka had claimed that substantial penalties might be due in the event that Plaintiff elected to distribute its products in Guatemala through another corporation, Plaintiff's Second Amended Complaint provides more specificity as to the party's adverse legal positions. Indeed, it is clear that Plaintiff has been constrained by the Defendant Ninoshka's threat of Guatemalan liability. Although that threat was first made in 2008, it was allegedly repeated in 2010, just before Plaintiff filed this lawsuit. Here, where Plaintiff's actions have been at least allegedly affected by the possibility of liability resulting from distribution of products through other Guatemalan avenues, the Court finds that the Second Amended Complaint states a sufficient basis for declaratory relief.[3]

B. Decline of Jurisdiction

However, even where the basis for declaratory relief is properly pleaded, the Court may nonetheless decline to adjudicate it. Indeed, as Defendants note, federal courts have held that "t[h]e Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Assoc. v. Rickover*, 369 U.S. 111, 112 (1962). *See also MedImmune*, 549 U.S. at 127 ("The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so."). Thus, individual courts must make a factual determination as to the propriety of each request for declaratory relief. *Wilton v. Seven Falls Co.*,

---

[3] The Court will address below Defendants' contention that no harm has arisen to Plaintiff, since Plaintiff has not alleged that it has been prevented from selling to Wal-Mart; instead, the Complaint alleges only that Plaintiff "wants" to sell its product to Wal-Mart for distribution in Guatemala. (DE #50 at 4).

515 U.S. 277, 286 (1995) (holding the courts have a "unique and substantial discretion in deciding whether to declare the rights of litigants."). Plaintiff contends that the decline of jurisdiction over declaratory actions is only proper in the context of parallel proceedings, which do not exist here. Defendants disagree.[4]

After considering pertinent case law, the Court finds that it has broad but not unlimited discretion to decline to exercise jurisdiction over actions for declaratory relief under these circumstances. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942) (noting certain factors that must be considered in determining exercise of jurisdiction). Nearly seventy years ago, the Supreme Court decided in *Brillhart* that certain factors are relevant to the exercise of declaratory relief in the context of a parallel state-court proceeding. Those factors include the efficacy of the adjudication in resolving the underlying dispute, and the necessity of joinder. *Id.* at 494 (making determination in context of parallel state-court proceeding). Fifty years later and just fifteen years ago, the Supreme Court in *Wilton* elaborated on the ability of a federal court to decline jurisdiction, implicitly recognizing that a court may decline jurisdiction over declaratory actions even in the absence of parallel state-court proceedings. *Wilton*, 515 U.S. at 287-88, 88 n.2 (noting that there are other accepted bases when stating that "[w]e note that where the basis for declining to proceed is the pendency of a state proceeding ..."). *But cf.* Pl.'s Opp. (DE #47 at 16) (contending wrongly that decline of jurisdiction is only appropriate in context of parallel proceedings). Indeed, the *Wilton* Court refused to delimit the discretion of federal courts to decline declaratory actions to "exceptional circumstances," notwithstanding the Supreme Court's prior

---

[4] Both parties missed the mark on this issue. Plaintiff's contention is clearly incorrect in light of *Wilton* and subsequent case law. However, Defendants' position is equally unsound, given that they correctly construes the Court's discretion while citing inapposite case law. For instance, Defendants cite to *DDFA of S. Fla., Inc. v. Dunkin' Donuts, Inc.*, No. 00-7455-civ-JAL, 2002 WL 1187207 (S.D. Fla. May 22, 2002), claiming that it supports courts' discretionary jurisdiction. However, DDFA is irrelevant to the circumstances at issue. In that case, Judge Lenard did not decline jurisdiction so much as she found that an adequate basis for the need for declaratory relief had not been alleged in the operative complaint. 2002 WL 1187207 at *5-6 ("DDFA alleges an array of tortious acts and breach of contract claims, which cannot be addressed by a declaration of the parties' respective rights and obligations under the contract").

holding in *Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 813 (1976) (holding courts have "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress). Instead, it counseled that "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

After considering the *Wilton* factors of practicality and wise judicial administration, the Court cannot escape the conclusion that Plaintiff's claims should not be adjudicated by this Court. Although at this stage the Court is obligated to draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party, *see Diamond Crystal Barnds, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010), even after doing so all the relevant factors weigh against the exercise of discretion.

First, even though Plaintiff seems to have pleaded a basis for declaratory relief, Plaintiff's claim is nonetheless still founded upon speculation. Under such circumstances, federal district courts have long been admonished by their circuit courts "against sitting in judgment of questions which may never come to pass." *MacMillan-Bloedel, Inc. v. Firemen's Ins. Co.*, 558 S. Supp. 596, 599 (D.C. Ala. 1983) (citing *Am. Fid. & Cas. Co. v. Penn. Threshermen & Farmer's Mut. Cas. Ins. Co.*, 280 F.2d 453, 455 (5th Cir. 1960)). Here, while Plaintiff's claim may state a sufficient basis to constitute "sufficient immediacy and reality" within the meaning of the Declaratory Judgment Act, *MedImmune*, 594 U.S. at 127, any such claim is nonetheless founded upon a theory that is inherently uncertain: whether Wal-Mart or any other distributor will market Plaintiff's products in Guatemala. Plaintiff has alleged in its Second Amended Complaint that it "desire[s] to sell directly to Wal-Mart for the Guatemalan market and places [Plaintiff] at doubt [sic] regarding its rights and legal relations to [Defendants]." (DE #39 ¶37). Yet, it has not alleged that such a contract has actually been consummated between Plaintiff and Wal-Mart.

7

More importantly, other factors weigh against the Court exercising jurisdiction over Plaintiff's claims. As Defendants noted in their first Motion to Dismiss, issues such as *forum non conveniens,* international comity, and due process are relevant to Plaintiff's claims. (DE #30 at 6-13). *See also Ford v. Brown,* 319 F.3d 1302, 1306-07 (11th Cir. 2003) (weighing factors involved in *forum non conveniens* determination); *Turner Enter. Co. v. Degeto Film GMBH,* 25 F.3d 1512, 1518 (11th Cir. 1994) (noting that "in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction"). At its most basic level, Plaintiff is seeking to have this Court adjudicate the propriety of another sovereign country's law. Such a request alone is not inherently improper. However, nearly the only jurisdictional hook Plaintiff offers in support of its request is that Plaintiff shipped certain goods F.O.B. through a Florida port. While federal courts certainly have an interest in adjudicating cases involving domestic corporations and domestic transactions, here the weight of the allegations and evidence put forth demonstrates that this matter involves largely Guatemalan transactions, individuals, and law.

A Mississippi federal court was recently faced with a similar action in *ITL International, Inc. v. Café Soluble, S.A.,* No. 10-cv-477, 2011 WL 1466381 (S.D. Miss. Apr. 18, 2011), involving the same Plaintiff similarly seeking to avoid the application of foreign law. In that case, Mars had sold its products to a Nicaraguan corporation with its principal place of business in Nicaragua. As in our case, Mars shipped certain goods F.O.B. through an American port, before shipping them ultimately to a foreign destination. The parties had an importation agreement, which had been first entered into on July 1, 1994 and was renewed ever year until July 2011. Eventually, Mars decided it no longer wanted to renew the agreement and sought three-part relief from the Mississippi federal court:

> 1) declaratory relief "preventing [the defendant] from claiming an affiliation or connection to Mars;"
>
> 2) "declaration that Mars is not liable to [the defendant] for withdrawing its permission to purchase Mars' products or use Mars' Marks;" and

8

> 3) "a declaration that Mars may sell its products to others for distribution in Nicaragua."

*Café Soluble*, 2011 WL 1466381 at *1. The Mississippi federal court decided that adjudicating any claims against the foreign defendant would violate due process, noting as follows:[5]

> [T]he interests of Mars and the state of Mississippi are insubstantial compared to the strong interests of Nicaragua. The declaratory judgment sought by Mars concerns activities of persons and organizations in Nicaragua and would require the cooperation of Nicaraguan courts to enforce .... Furthermore, except for the origin of the distribution chain, almost all aspects of the parties['] relationship takes place in Nicaragua. The participants, especially the other persons and entities that [Mars] seeks to enjoin, are primarily Nicaraguan. Mars does not point to any witnesses or evidence in Mississippi. The merits of the case involve Nicaraguan law.

*Id.* at *5.

Without needing to engage in a weighing of the factors under the doctrine of *forum non conveniens*, international comity or due process, the Court finds that the result in the instant case should not vary from that of *Café Soluble*. Like in that case, the Guatemalan interest in this matter dwarfs that of this Court. Nearly all the participants in this matter are Guatemalan. Nearly all the evidence emanates from Guatemala. Although Plaintiff alleges that all relevant purchases were made from a Miami office and paid from Confectionary's office in Miami, (DE #39 ¶11), it is clear both from the parties' filings and also oral argument that nearly all of the relevant evidence resides in Guatemala. Although the Court recognizes Plaintiff's contention that it should not be held liable under a penalty clause imposed by a foreign sovereign nation, the Court finds that its own interest in this matter pales in comparison to that Guatemala.

---

[5] Indeed, the *Café Soluble* court relied in part upon an earlier decision involving the same plaintiff, *ITL International, Inc. v. Grupo Constenla, S.A.*, No. 10-cv-467 (S.D. Miss. Sept. 24, 2010) (dismissing plaintiff's claim as violative of due process).

9

As such, in accordance with the Supreme Court's dictate to yield to considerations of practicality and wise judicial administration, *Wilton*, 515 U.S. at 288, the Court declines to exercise its jurisdiction over Plaintiff's declaratory relief claim insomuch as it seeks determination of Mars' obligations under Guatemalan law. The uncertainty inherent in Plaintiff's claim, when combined with the greater interest of a foreign jurisdiction over the proceedings, makes it clear that exercising jurisdiction over that claim would be improper. As other courts have done when faced with the same plaintiff seeking substantially the same relief, the Court finds that this action must be dismissed with prejudice.

C.  Trademark Infringement

As noted above, Plaintiff's one-count Second Amended Complaint is predicated upon two requests for declaratory relief: the first requesting findings as to Mars' obligations under Guatemalan law, and the second alleging trademark infringement. Having declined jurisdiction to adjudicate the former, the Court nonetheless finds that Plaintiff's trademark claim is properly before this Court. Unlike *Café Soluble*, in which the district court found that Mars' claims were based only on a possibility of a future violation of the Lanham Act, *Café Soluble*, 2011 WL 144381 at *6, here Plaintiff alleges that such violations are ongoing. (DE #39 ¶¶33-35).

Nonetheless, in the form in which it is pleaded in the Second Amended Complaint, Plaintiff's claim for trademark infringement fails to state a cause of action. Instead, it seems to be included as more of an afterthought. Plaintiff will be permitted to amend its Second Amended Complaint to cure that defect.

IV.  Conclusion

Accordingly, having considered the Defendants' Motion to Dismiss and held oral argument on the same and being otherwise fully advised in the premises, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (DE #44) is **GRANTED**.

2. Plaintiff's Second Amended Complaint (DE #39) is **DISMISSED WITH PREJUDICE** as to Plaintiff's request for declaratory relief regarding its obligations under Guatemalan law.

3. In all other regards, Plaintiff's Second Amended Complaint is **DISMISSED without prejudice.** If Plaintiff elects to **AMEND** its claim for trademark infringement, it shall do so within **TEN DAYS** of the date of this Order.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 27th day of July, 2011.

JAMES LAWERENCE KING
UNITED STATES DISTRICT JUDGE

cc:
*Counsel for Plaintiff*
**Michael P. Socarras**
McDermott Will & Emery
600 13th Street NW
12th Floor
Washington, DC 20005-3096
202-756-8000
Email: msocarras@mwe.com

**Paul G. Alvarez**
McDermott, Will & Emery, LLP
600 Thirteenth Street, N.W.
Washington, DC 20005
202-756-8000
Email: palvarez@mwe.com

**Raquel A. Rodriguez**
McDermott Will & Emery LLP
201 S Biscayne Boulevard
Suite 2200
Miami, FL 33131-4336
305-358-3500
Fax: 305-347-6500
Email: rrodriguez@mwe.com

**Roberto Martinez**
Colson Hicks Eidson
255 Aragon Avenue
2nd Floor
Coral Gables, FL 33134-2351
305-476-7400
Fax: 476-7444
Email: bob@colson.com

**Alexandra M. Mora**
Akerman Senterfitt
Suntrust International Center
1 SE 3rd Avenue
25th Floor
Miami, FL 33131-1714
Email: alexandra.mora@akerman.com

**Paul Courtney Huck , Jr.**
Colson Hicks Eidson
255 Aragon Avenue
2nd Floor
Coral Gables, FL 33134
305-476-7400
Fax: 305-476-7469
Email: paul@colson.com

*Counsel for Defendants*
**Leah B. Storie**
Squire Sanders & Dempsey LLP
Wachovia Financial Center
200 S Biscayne Boulevard
40th Floor
Miami, FL 33131-2398
305.577.7025
Fax: 305.577.7001
Email: lstorie@ssd.com

**Pedro Julio Martinez-Fraga**
Squire, Sanders & Dempsey LLP
200 S. Biscayne Boulevard
Suite 4000
Miami, FL 33131
(305) 577-7000
Fax: (305) 577-7001
Email: pmartinezfraga@ssd.com


**Pierre H. Bergeron**
Squire Sanders & Dempsey LLP
221 E 4th Street
Suite 2900
Cincinnati, OH 45202-4095
513-361-1200
Fax: 513-361-1201
Email: pbergeron@ssd.com